HENRY KING, *vs.* THE INDIAN ORCHARD CANAL COMPANY.

A manufacturer of brick made and burnt on the land of another, but of which the manufacturer has no lease, and no other interest than a right to enter and make the brick, has no such possession of the brick as to give him a lien thereon for his labor.

The lien of an artizan upon an article manufactured by him is lost by a voluntary abandonment of the possession of the property.

THIS was an action of tort for the conversion of a quantity of brick, upon which the plaintiff claimed a lien for their manufacture. It was submitted to this court on an agreed statement of the evidence, of which the most material portion was as follows: The defendants, a corporation, contracted in writing with Charles Stearns to erect a brick factory on their land at Indian Orchard, and to furnish all the materials for the same, to be completed January 1st, 1852.

The defendants also stipulated "that during the continuance of said contract, said Stearns might use sufficient ground in some convenient place or places, for a brickyard and lumber-yard without charge, and also for one year after the expiration of the contract at a moderate rent; said Stearns to remove all rubbish and leave the ground in as good order as when he takes possession of it." Stearns selected a place on the defendant's land for a brickyard, and employed the plaintiff to make and burn on said lot two millions of brick, on or before November 1st, 1851, Stearns to furnish all the materials and apparatus necessary for making the same, and the plaintiff to perform all the labor. A complete understanding of the case requires this contract to be set out in full.* In pursuance of this contract, the plaintiff finished

* Articles of agreement of contract made this fourth day of April, 1851, by and between Charles Stearns, of Springfield, on the one part, and Henry King, of Holyoke, on the other part, for the manufacturing of brick at Indian Orchard. The said Stearns on the one part agrees to make and prepare the yard and kiln ground and put them in order, furnish all necessary machines for grinding the clay and striking the brick, furnish the moulds for making the brick, furnish all necessary lumber and boards for covering the brick and the kilns, and all lumber

King *v.* Indian Orchard Canal Company.

burning the brick on the 6th September, 1851, and his fore-man, Mr. Cowles, remained on the yard and continued to count out brick for Stearns until September 13th, 1851, when he notified the latter that he had other work to do elsewhere, and could not count out any more, and that Stearns must do it for himself; that after that time Stearns's men did go on and count out the brick. The defendants admitted that on the 20th September, 1851, by virtue of a bill of sale of that date, and delivery from said Stearns to them, they took

necessary to be used on or about the yard, deliver the clay upon or near the yard in such quantities and at such times as the said King may desire and want, having regard to the convenience of transportation, and shall also furnish sand convenient to the yard, say in the cut south of the yard, bring water for all necessary purposes to the yard and as near the surface of the ground as convenient.

The said King is to make and burn, or cause to be made and delivered into cars or carts, the brick, which are to be of as good quality as Charles McClallan's have averaged for the past three years, provided the materials furnished will admit of it, and provided the said Stearns shall furnish wood of good quality and suitable quantity upon the yard, or near the yard for burning said brick. The number of brick to be made is two million, and to be made and burned on or before the 1st day of November next. The said Stearns agrees to pay the said King two dollars and twenty-five cents for each thousand so made and delivered. One half to be paid in cash or in goods in such quantities and at such times as the said King may want for himself or his workmen, and to be paid as fast as the brick are counted out, and all of the one half which is cash and goods to be paid on or before the 1st day of November next; the other half to be paid in Indian Orchard Company s bonds, or Indian Orchard Company's notes, or the notes of the said Stearns well secured, running the same length of time as the bonds; say, averaging three years, at the election of the said King, between the date of these presents and the 1st of November next.

After the said King has made and burnt the brick as above stated, they shall all be counted as soon as the said King may elect; and the said one half of money and goods shall then be due the said King. The brick to be made of the usual size.

And it is further understood and agreed between the parties to this contract, that whatever bricks may be left on the yard, on the said 1st day of November next, the said King shall not be holden to count them out, but they shall be counted in the kiln, and said King shall make the allowance of the fair expense of counting them out, and also for the expense of burning over the soft brick.

It is understood that the sum to be allowed by said King in lieu of counting the brick that may be left after the 1st day of November next, shall be six cents per thousand.

In presence of }     CHARLES STEARNS
  Roland P. White. }     HENRY KING.

King v. Indian Orchard Canal Company.

1.594.876 of the brick so manufactured by the plaintiff, which was the conversion complained of.

A witness for the plaintiff testified that he was present on 24th September, 1851, when the plaintiff demanded of said Stearns a settlement for making the brick, and forbade his moving them till he was paid, and also on the same day when the plaintiff notified the defendants' agent not to take the brick. The defendants proceeded to take the brick after said notice.

Cowles, the plaintiff's foreman, also testified that he was directed by the plaintiff not to open another kiln after the first, until some arrangement was made about the pay; that Stearns's agents requested him a number of times towards the close of his stay on the yard, to open the second kiln, but that he refused, alleging the plaintiff's instructions. He also stated that he continued to oversee the plaintiff's work on the yard till September 13th, 1851, when he left; that he had charge of the hands, of whom there were from fifteen to twenty, while making the brick, that he never delivered any of the brick to Stearns or his agents, or had any orders to do so, except to count out the brick which they drew away while he was at work there ; and that he had no other authority than to count out the brick as the teams came there to take them; that the plaintiff himself was only occasionally on the yard, as he lived at a distance in another town.

The defendants proved by one Putnam, foreman for Stearns, that Stearns's workmen were at work on the brick-yard during the whole summer, until September, enlarging and filling up the ground ; that they were so at work while the plaintiff was striking the brick, and that the kiln ground was not prepared when the plaintiff began making the brick, but was provided by Stearns as the plaintiff needed it; that the plaintiff and his hands, while at work on the yard, occupied ground enough to burn the brick on. The court were to render the proper judgment.

*G. Ashmun & W. G. Bates,* for the plaintiff.

*R. A. Chapman & G. Walker,* for the defendants.

BIGELOW J. There is nothing in the contract between the

20 *

plaintiff and Charles Stearns, under which the brick in con‑ troversy were manufactured, by virtue of which the plaintiff can claim a lien upon them as against Stearns by agreement. If any such claim exists, it must rest on the right at common law of mechanics and artizans to retain property upon which they have bestowed labor and services, until the charge thereby attaching to it is paid and discharged. To the maintenance of such a lien, it is essential that the person who has performed the labor or rendered the service, should have the right of possession of the chattels over which it is claimed, and that this right should be actually exercised with‑ out relinquishment or abandonment. Cross on Lien, 31, 36; Yelv. (Amer. ed.) 67 *i*, note ; 2 Kent Com. (6th ed.) 639. Upon the undisputed facts of this case, it appears to us that the plaintiff fails to show any such possession of the property in question, as will support the lien which he sets up, in order to maintain this action. In the first place, he shows no right or interest in himself, either as owner, lessee, or tenant, to the possession of the yard in which the brick were made and burned. By virtue of the contract with the defendant cor‑ poration, who owned the land, Stearns had the right to occupy the ground for a brickyard during the continuance of his contract, without charge, and for a year subsequent to the expiration of the contract, at a moderate rent. This gave to Stearns the possession of the premises for the time specified. But it does not appear that Stearns, either by his written contract with the plaintiff for the manufacture of the brick, or by any verbal agreement or act, surrendered the possession thereof to the plaintiff. On the contrary, it is especially provided by the written contract, that Stearns shall prepare the brickyard and fit it for use, and that he shall furnish and deliver on the premises from time to time as required, the materials for making and burning the brick, clearly implying that Stearns was to continue in possession, and it was proved at the trial that, in point of fact, the workmen of Stearns were employed in the yard enlarging and filling it up during the whole summer, while the plain‑ tiff was engaged in striking the brick, and preparing and

burning the kilns. Upon these facts, it is manifest that the plaintiff never had any exclusive and unconditional possession of the property. It was, at most, only a mixed possession with Stearns, or rather a license to the plaintiff to enter upon and use the yard of Stearns for the purpose of making and burning the brick. It is entirely clear that such a restricted and limited possession is insufficient to support a lien. It amounts to nothing more than the ordinary transaction of work done by one person in the manufacture or repair of articles for another, upon the premises of the latter. The workman in such a case has, to a certain extent, possession of the property, upon which his labor and services are expended; but it is a qualified and mixed possession, which can form no valid basis for a lien. Cross on Lien, 35, 36.

It was urged that the stipulation in the contract, by which it is provided that the plaintiff shall count out the brick, shows that the possession of the brick was in the plaintiff until a delivery was made to Stearns by this act of the plaintiff in counting the brick. But this argument proceeds on a misapprehension of that provision in the agreement. The purpose of counting the brick was, not to effect a delivery of them, but to ascertain the number manufactured, the amount due the plaintiff, and the sum which, by the terms of the contract, was to be paid to him in cash. Such, indeed, is the declared purpose of the clause in the agreement respecting the counting of the brick. Besides; it is expressly provided, that the plaintiff is not to be held to count the brick in the yard which may be left there on the first of November, but that they are to be counted by Stearns, who is to be allowed the expense thereof by the plaintiff, clearly showing that no delivery was necessary to vest the possession of the brick in Stearns, and that the sole object of counting the brick was to ascertain the sum due the plaintiff.

We think it equally clear, upon the facts proved, that if the plaintiff ever had any possession of the brick, it was relinquished by him after September 13th, when his foreman left the yard to do work elsewhere, and that Stearns after that

time, and on the 25th September, when the bill of sale and delivery of the brick was made to the defendants, was in the sole and exclusive possession and control thereof. If, therefore, the plaintiff ever had any valid lien on the property, this was a clear abandonment and waiver of it.

*Plaintiff nonsuit.*